**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **TYRONE OWENS, # B-09385,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-774-MJR** |
| | ) | |
| **MS. MASON, MARCUS MYERS,** | ) | |
| **CAROL McBRIDE,** | ) | |
| **JACQUELINE LASHBROOK,** | ) | |
| **JOHN BALDWIN,** | ) | |
| **WEXFORD MEDICAL SERVICES,** | ) | |
| **LARUE LOVE, C/O URASKI,** | ) | |
| **MEDICAL DIRECTOR (IDOC),** | ) | |
| **and MR. FLATT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that various Defendants wrongly punished him with segregation for conduct related to his serious mental illness, violated HIPAA by disclosing his mental health writings to security staff, and retaliated against him. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Also before the Court are several motions filed by Plaintiff, including a motion seeking a temporary restraining order ("TRO") and preliminary injunction (Docs. 10 and 12), a "Motion in Addendum" (Doc. 11), and a "Motion to Fast Track" (Doc. 13).

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the

complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that one of Plaintiff's claims survives threshold review under § 1915A.

**The Complaint**

On May 11, 2016, Plaintiff wrote a kite to tell mental health staff that he was hearing voices.  Defendant Mason (a mental health worker) gave the document to Defendant Uraski (Intelligence Officer) (Doc. 1, p. 7).  The kite allegedly said that Plaintiff "was hearing evil voices telling [him] to kill a security staff member because he's trying to kill me already. He told the lieutenant to give me the max."  *Id*.  Plaintiff claims that the note had been altered to make it appear that he was actually threatening to kill a staff member; instead, he was seeking help from mental health staff.  Plaintiff has been hearing voices since he was 13 years old and has been diagnosed with serious mental illness.  He has written to Mental Health at Pinckneyville over 50 times, and has told Defendant Mason about these voices on many occasions.  He maintains that he would not and could not do what the voices instructed him to do, and what the voices told him in his head was not a "threat." (Doc. 1, pp. 7, 9).

Based on that kite, Plaintiff was charged with a disciplinary violation and, he claims, was punished with six months in segregation.  The complaint articulates several claims. First, Defendants Mason, Myers, McBride, Lashbrook, Baldwin, Wexford Medical Services, Love, Uraski, Flatt, and the Medical Director of the IDOC all conspired to violate the HIPAA law, by creating a policy instructing mental health workers to disclose mental health writings to security staff.  These Defendants further conspired to violate Plaintiff's rights by instituting a policy to retaliate against seriously mentally ill inmates by placing them in segregation for lengthy periods, and requiring them to remain in their cells for 24 hours a day despite a settlement agreement to stop that policy.

Plaintiff claims that his due process rights were violated because two of the officers who conducted his disciplinary hearing (Defendants McBride and Myers) are both

Black, and IDOC policy states that two people of the same race should not serve on a hearing committee (Doc. 1, p. 8).  Just before the hearing, Defendant McBride stabbed Plaintiff in the chest with a tightly-rolled wad of papers and verbally threatened him.  The incident was witnessed by Defendants Myers and Pearce.  During the hearing, Plaintiff was asked, "How do you plea?" but was not allowed to explain, nor was his ticket read to him.  Plaintiff later learned that he was given six months in segregation.  He now suffers from severe headaches and has suicidal thoughts because he is kept in the cell 24 hours a day, which he claims is too long for a seriously mentally ill inmate (Doc. 1, p. 8).  These conditions cause the voices to occur constantly.  Plaintiff wrote four grievances over these matters, but Defendant Flatt refuses to answer them.

On July 7, 2016, Plaintiff received another ticket issued by Defendant Uraski, based on another kite he had written to Defendant Mason.  As with the first ticket, Plaintiff wrote about the voices he hears, and Defendant Mason turned the note over to security.  Plaintiff was told he would get another six months in segregation.  Defendant Mason explained that according to Defendant Wexford, she was required to inform security about the voices.  Plaintiff asserts that now that he is required to be treated by the prison mental health providers, and is covered by a proposed settlement agreement regarding mental health treatment, the mental health workers at Pinckneyville are retaliating by giving his mental health documents to security (Doc. 1, p. 9).  Plaintiff summarizes several provisions of the settlement agreement in *Rasho v. Baldwin, et al.*, Case No. 07-cv-1298-MMM (C.D. Ill. filed Nov. 7, 2007), and includes as an exhibit the proposed settlement notice he received as a class member (Doc. 1, pp. 9, 16-17).

Plaintiff also provided a copy of the adjustment committee report on the May 11, 2016, disciplinary action (Doc. 1, pp. 13-14).  This document reflects that Plaintiff was charged

with "206 – Intimidation or Threats," and pled guilty to the conduct of writing a note describing voices that told him to kill a staff member.   Mental Health staff were contacted, and recommended a segregation term of no more than three months because of Plaintiff's serious mental illness.   According to this document, Plaintiff was in fact punished with three months in segregation, and lost one month of good conduct credits.   Plaintiff did not include any documentation relating to the July 7, 2016, disciplinary ticket with his complaint.

Plaintiff seeks compensatory and punitive damages, as well as a temporary restraining order and preliminary injunction ordering his release from segregation (Doc. 1, p. 10).

## Motions for Emergency TRO/Preliminary Injunction (Docs. 10 and 12)

The TRO/Preliminary Injunction motion at Doc. 10 is identical to the second TRO/PI motion filed at Doc. 12, with the exception that Plaintiff included three pages of exhibits with Doc. 10 that were not included with the motion at Doc. 12.   In this motion, Plaintiff asserts that he has been punished with segregation time for a total of nine months, which will not end until February 4, 2017.   He includes other new allegations that were not contained in the complaint, including a claim that he was placed in segregation simply because he is seriously mentally ill, and because he continues to file grievances and lawsuits (Doc. 10, p. 1).   He further alleges that Dr. Thakur (psychiatrist) instructed Defendant Mason to take action to get Plaintiff out of segregation, and attempted along with Ms. Hayes (another mental health worker) to convince security officials and Defendant Love to release Plaintiff from segregation, to no avail. He states that Dr. Thakur told Defendant Mason that giving Plaintiff's kite to security was improper (Doc. 10, p. 2).

Plaintiff's exhibits include a "Treatment Review Committee Hearing Summary"

from June 20, 2016, noting that the committee considered whether to forcibly medicate Plaintiff, but decided such action was not necessary (Doc. 10, pp. 6-7).  He also attaches another copy of the Notice of Proposed Settlement from *Rasho v. Baldwin*.

## Motion in Addendum (Doc. 11)

This document includes more factual allegations that were not presented in Plaintiff's complaint, and presents several pages of additional exhibits, which it appears that Plaintiff wants to add to his complaint.  He states that grievances he had filed over the incidents in the complaint were not answered in a timely fashion, violating his due process rights.  He asserts that he exhausted his administrative remedies (Doc. 11, pp. 1-2).  Referring to the tickets he received on July 6, 2016, he claims that he was subjected to double jeopardy because the same ticket was heard twice, and he was allegedly given six months in segregation for those infractions (Doc. 11, pp. 1-2).

Plaintiff includes copies of an Administrative Review Board response dated August 15, 2016, and grievances filed on July 12, 2016, and May 30, 2016 (Doc. 11, pp. 3-4, 9). He attaches a statement and a memorandum of law, explaining that he wrote down his problems with hearing voices because his therapist told him to do so, and those writings were protected by psychotherapist-patient privilege, thus should not have been shared with security staff (Doc. 11, pp. 5-8).

Also included are three Final Summary Reports of the Adjustment Committee, from two different charges dated July 6, 2016 (Doc. 11, pp. 10-15).  The first report references "Incident # 201601769/1-PNK" and the second is labeled "Incident # 201601769/2-PNK" (Doc. 11, pp. 10, 12).  The third report is a "Revised" version of Incident # 201601769/1-PNK, which shows an apparent correction of Plaintiff's living unit number (PNK-R5-C-32) (Doc. 11, p. 14).

The first report includes a charge of 206-Intimidation or Threats, and notes that a charge of 208-Dangerous Communications was deleted.  This charge stemmed from a note in which Plaintiff wrote that he was hearing voices telling him to kill a security staff member (Doc. 11, pp. 10).  Plaintiff pled not guilty, stating that he wrote the note to Mental Health.  He was punished with three months in segregation, and had one month of good conduct credits revoked.  The second report showed that Plaintiff was charged with writing a letter threatening staff and wardens, also stating "I know I need help with these voices. I hear plans to do it daily.  Do not turn my paperwork into I.A." (Doc. 11, p. 12).  Based on this letter, the committee found Plaintiff guilty of both 206-Intimidation or Threats, and 208-Dangerous Communications.  This time, he was punished with only one month of segregation, but another month of good conduct credits was revoked (Doc. 11, p. 12).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Initially, it must be noted that a litigant cannot amend or supplement the allegations in a complaint by adding new legal claims in a piecemeal fashion, as Plaintiff has attempted to do here with the motions at Docs. 10, 11, and 12.  In accordance with Federal Rule of Civil Procedure 8(a), such piecemeal amendments are not permitted.  Instead, all claims against all defendants must be set forth in a single document.  However, the exhibits Plaintiff submitted along with his motions may be considered to the extent they assist in evaluating the claims in the original complaint.

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.  Any other claim

that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:**  Defendants Mason, Myers, McBride, Lashbrook, Baldwin, Wexford Medical Services, Love, Uraski, Flatt, and the Medical Director of the IDOC conspired to violate Plaintiff's rights under HIPAA, by creating a policy instructing mental health workers to disclose mental health writings to security staff;

> **Count 2:**  Defendants Mason, Myers, McBride, Lashbrook, Baldwin, Wexford Medical Services, Love, Uraski, Flatt, and the Medical Director of the IDOC conspired to violate Plaintiff's rights by instituting a policy to retaliate against seriously mentally ill inmates by placing them in segregation for lengthy periods, and requiring them to remain in their cells for 24 hours a day, in violation of the settlement agreement in *Rasho v. Baldwin*, which applies to Plaintiff as a class member;

> **Count 3:**  Defendants Mason, Uraski, McBride, Myers, and Lashbrook subjected Plaintiff to unconstitutional conditions of confinement in segregation in light of his serious mental health condition, by requiring him to remain in his cell for 24 hours a day;

> **Count 4:**  Defendants McBride and Myers, who are both Black, violated Plaintiff's due process rights by conducting his disciplinary hearing on the May 11, 2016, charge in violation of the IDOC policy prohibiting two officers of the same race from serving on a disciplinary committee;

> **Count 5:**  Defendants Mason and Uraski improperly subjected Plaintiff to disciplinary sanctions based on written communications to his mental health providers that should not have been disclosed to security staff;

> **Count 6:**  Defendant Mason turned over Plaintiff's privileged mental health communications to security staff, in retaliation for the requirement to provide mental health treatment to Plaintiff pursuant to the terms of the settlement agreement in *Rasho v. Baldwin*, of which Plaintiff is a class member.

Count 3 shall proceed for further consideration in this action.  However, Counts 1, 2, 4, 5, and 6 shall be dismissed for failure to state a claim upon which relief may be granted.

## Dismissal of Count 1 – Conspiracy to Violate HIPAA

For the purpose of this merits review under § 1915A, the Court takes Plaintiff's allegations as true, and assumes that Plaintiff's private mental health information was improperly

disclosed.  Nonetheless, Plaintiff's claim in Count 1, which is based on the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996), must fail.  The Seventh Circuit has held that "HIPAA does not furnish a private right of action." *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011) (citing *Acara v. Banks*, 470 F.3d 569, 570-72 (5th Cir. 2006)); *see also Doe v. Bd. of Trs. of Univ. Ill.*, 429 F. Supp. 2d 930, 944 (N.D. Ill. 2006) ("HIPAA provides civil and criminal penalties for improper disclosures of medical information, but it does not create a private cause of action, leaving enforcement to the Department of Health and Human Services alone.").  Only the Secretary of Health and Human Services may pursue sanctions if a HIPAA violation has occurred.  42 U.S.C. § 1320d-5(a)(1). *See also Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir.2010); *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010).  Consequently, Plaintiff cannot bring a claim for the alleged HIPAA violation.

Likewise, the conspiracy claim cannot stand.  Conspiracy is not an independent basis of liability in §1983 actions.  *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).  Thus, an alleged conspiracy to violate HIPAA states no claim, where Plaintiff cannot maintain an action for a HIPAA violation in the first place.  **Count 1** shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Dismissal of Count 2 – Conditions of Segregation Confinement Violate *Rasho v. Baldwin* Settlement

According to the allegations in the complaint, Plaintiff is a member of the plaintiff class in *Rasho v. Baldwin*, because he has been diagnosed with a serious mental illness and is in

the custody of the IDOC.  Certain provisions of the settlement agreement in *Rasho*[1] thus apply to Plaintiff's confinement in segregation.

Plaintiff's sweeping assertion that Defendants Mason, Myers, McBride, Lashbrook, Baldwin, Wexford Medical Services, Love, Uraski, Flatt, and the Medical Director of the IDOC conspired to adopt a policy to retaliate against seriously mentally ill inmates and violate the *Rasho* settlement agreement by placing them in segregation for lengthy periods and requiring them to remain in their cells for 24 hours a day, has no factual support in the complaint. However, if the conditions of Plaintiff's segregation confinement indeed require him to remain in his cell 24 hours per day without weekly access to out-of-cell time, he may have an argument that Defendant Baldwin has failed to comply with the provisions of the *Rasho* settlement agreement, which he signed in his official capacity.[2]  Plaintiff may also have a potential claim that the conditions of his confinement run afoul of the Eighth Amendment's prohibition against cruel and unusual punishment – that claim shall be reviewed in **Count 3** below.

The *Rasho* case sought injunctive relief only, in order to remedy the alleged problems of inadequate access to mental health treatment within Illinois prisons, as well as frequent and extended punishment of mentally ill inmates with isolation/segregation which has exacerbated their mental health problems.  The court in *Rasho* has noted that an inmate who wishes to seek damages arising from his particular circumstances of incarceration must do so in an individual action, as Plaintiff has done here (*See, e.g.*, *Rasho* docket entries (TEXT ONLY

---

[1] *See Rasho v. Baldwin*, Case No. 07-cv-1298-MMM (C.D. Ill. filed Nov. 7, 2007).  The court's Order of May 23, 2016, accepting the parties' Settlement Agreement is found at Doc. 710 in that case.  The Amended Settlement Agreement is filed at Doc. 711-1.

[2] Under the *Rasho* Settlement Agreement, mentally ill offenders who are in disciplinary segregation for more than 16 days are to receive "weekly unstructured out-of-cell time" of an amount equivalent to the time allowed for all other segregation inmates, unless the inmate's individual treatment plan calls for more out-of-cell time (Doc. 711-1, p. 18, in *Rasho*).  In addition, mentally ill offenders who are in segregation for longer than 60 days must be given eight hours per week of out-of-cell time (Doc. 711-1, pp. 18-20, in *Rasho*).

ORDERS) dated 5/18/2016, 9/16/2016, 9/26/2016).   Because the terms of the settlement agreement do not provide for the payment of money damages, Plaintiff would not be entitled to compensation even if he demonstrates that Defendants failed to comply with the settlement terms in his case.   Furthermore, the *Rasho* court has made it clear that individualized relief of any kind shall not be considered or ordered in the context of that class action case (*See Rasho* docket entries (TEXT ONLY ORDERS) dated 9/16/2016, 9/26/2016).   Class members who have submitted letters and motions in *Rasho* regarding their individual concerns, or moved for enforcement of the settlement agreement, have been advised to proceed through the IDOC's grievance process and/or to contact class counsel.[3]   The court has further directed class counsel to review a number of individual motions and letters which were filed of record in that case (*See, e.g., Rasho* docket entries (TEXT ONLY ORDERS) dated 6/30/2016, 8/19/2016, 8/30/2016).   In keeping with this approach, Plaintiff is ADVISED to inform the *Rasho* class attorneys of his concerns regarding the implementation of the terms of the settlement agreement as they relate to his circumstances, if he has not already done so.

   Plaintiff is seeking injunctive relief in the form of an order releasing him from segregation altogether.   The *Rasho* settlement does not provide for such relief, but does establish a mechanism and schedule for review of the segregation status and disciplinary outcomes of certain seriously mentally ill offenders.   Plaintiff's complaint and motions do not indicate that he has sought or undergone such a review of his status.   The time frame for conducting such reviews has not yet expired.

   If Plaintiff were to instead request injunctive relief to require that he be provided with the out-of-cell time specified in the *Rasho* settlement (which to date he has not done), this

---

[3] Plaintiff was supplied with the contact information for the attorneys representing the *Rasho* plaintiff class on his notice of the proposed settlement in the case (Doc. 1, pp. 16-17).

Court is skeptical that it could consider or order such a remedy.  The *Rasho* case is still pending in the Central District of Illinois, and it would be improper for this Court to insert itself into that pending case in order to determine whether or not Defendants have complied with the terms of the settlement.  For these reasons, Plaintiff's claim in **Count 2** that Defendants are in violation of the terms of the settlement agreement in *Rasho* shall be dismissed from this action without prejudice.

**Count 3 – Eighth Amendment – Conditions of Segregation Confinement**

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime.  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment.  *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

Claims under the Eight Amendment have both an objective and subjective component.  *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991).  The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs or deprived the inmate of the minimal civilized measure of life's necessities.  *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

The subjective component of unconstitutional punishment focuses on the state of mind of the defendant.  *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994).  In conditions of confinement cases, this is deliberate indifference to inmate health or safety.  *See, e.g., Farmer v. Brennan*, 511

U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

In the present case, Plaintiff's allegations suggest a claim that his 24/7 confinement in segregation, without any opportunity for recreation, exercise, or unstructured time outside his cell, may have subjected him to cruel and unusual punishment by aggravating the symptoms he suffers as a result of his serious mental illness. Addressing concerns for the physical health of prisoners, the Seventh Circuit has noted that a "[l]ack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened." *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986). The appellate court has expanded that observation to include a concern for the mental health of prisoners with reference to their need for adequate exercise:

> In recent years we have not only acknowledged that a lack of exercise can rise to a constitutional violation, *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1986), but have concluded that "exercise is now regarded in many quarters as an indispensable component of preventive medicine." *Anderson v. Romero*, 72 F.3d 518, 528 (7th Cir. 1995). Given current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being.

*Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001). At this early stage, Plaintiff's

complaint contains sufficient allegations to suggest that his lengthy confinement in segregation without the opportunity to leave his cell subjected him to an objectively serious risk of harm to his mental health.

As to the subjective component of the Eighth Amendment claim, the complaint indicates that Defendants Mason, Uraski, McBride, Myers, and Lashbrook were aware of Plaintiff's serious mental health needs, and his assertions that the segregation conditions aggravated his symptoms. However, they apparently did not take steps to mitigate those conditions. Plaintiff may thus proceed with an Eighth Amendment claim against these Defendants. However, Defendants Baldwin, Love, Flatt, and the IDOC Medical Director shall be dismissed from this claim without prejudice, as the complaint does not suggest that they were personally involved in maintaining Plaintiff's confinement under these conditions. Defendant Wexford Medical Services ("Wexford") shall also be dismissed from this claim, because there are no facts suggesting that the segregation conditions were imposed pursuant to a policy promulgated by Wexford. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable only if it had a policy or practice that caused the alleged violation of a constitutional right).

To summarize, the Eighth Amendment claim in **Count 3** against Defendants Mason, Uraski, McBride, Myers, and Lashbrook, for violating Plaintiff's constitutional rights by depriving him of access to out-of-cell exercise, recreation, and/or unstructured time during his confinement in segregation while he suffered from a serious mental health condition, shall proceed for further review.

**Dismissal of Count 4 – Due Process Violation**

This claim is based on Plaintiff's assertion that the May 11, 2016, disciplinary

proceeding conducted by Defendants McBride and Myers violated his rights under the due process clause of the Fourteenth Amendment.  He argues that IDOC policy prohibits two officers of the same race from serving on a disciplinary committee, and concludes that because these two Defendants are African-American, the hearing did not comport with due process requirements. However, even if the racial composition of the disciplinary committee failed to comply with IDOC policy, that fact does not violate the Constitution and thus does not give rise to a federal claim cognizable in a civil rights action.   A federal court does not enforce state law or regulations.  *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set out the minimal procedural protections that must be provided to a prisoner in disciplinary proceedings in which the prisoner loses good time, is confined to a disciplinary segregation, or otherwise subjected to some comparable deprivation of a constitutionally protected liberty interest.  *Id.* at 556-572.  Notably, the racial composition of the tribunal is not a factor in this analysis.

> *Wolff* required that inmates facing disciplinary charges for misconduct be accorded [1] 24 hours' advance written notice of the charges against them; [2] a right to call witnesses and present documentary evidence in defense, unless doing so would jeopardize institutional safety or correctional goals; [3] the aid of a staff member or inmate in presenting a defense, provided the inmate is illiterate or the issues complex; [4] an impartial tribunal; and [5] a written statement of reasons relied on by the tribunal.  418 U.S. at 563-572.

*Hewitt v. Helms*, 459 U.S. 460, 466 n.3 (1983).  The Supreme Court has also held that due process requires that the findings of the disciplinary tribunal must be supported by some evidence in the record.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).  Even a meager amount of supporting evidence is

sufficient to satisfy this inquiry.  *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Plaintiff's complaint does not show that his May 11, 2016, disciplinary hearing failed to comply with the basic due process protections outlined in *Wolff*.  He admitted that he wrote the note that gave rise to the disciplinary charge.  His position was that the note did not represent a threat, but instead was written in an effort to seek mental health care.  Plaintiff's defense, however, did not prevail.  The note itself provided "some evidence" to support the guilty finding on the disciplinary charge.

For these reasons, Plaintiff's due process claim in **Count 4**, based on the racial composition of his hearing committee, fails to state a claim upon which relief may be granted. This count shall be dismissed with prejudice.

## Dismissal of Count 5 – Challenge to Disciplinary Sanctions Based on Communications Directed to Mental Health

Plaintiff seeks damages as well as an order requiring Defendants to release him from segregation, arguing that it was improper to bring disciplinary charges against him based on his written communications to Defendant Mason.  He asserts that Defendant Mason should not have shared his notes with security staff, both because of HIPAA restrictions and because he wrote the notes for the purpose of seeking mental health treatment.  He claims he was not making an actual threat to harm anybody, but was merely reporting what the voices in his head were telling him to do.  He never intended to act out what the voices told him.

Regardless of whether Plaintiff invokes HIPAA, doctor-patient privilege, or some other theory, his claim is an attack on the validity of the disciplinary actions that resulted in his punishment with segregation.  As demonstrated by the reports of the Adjustment Committee that heard the disciplinary charges, Plaintiff was not only punished with segregation, but also lost part of his accumulated good conduct credits in each case.  Nowhere does he claim or indicate that

any of these disciplinary actions have been reversed or expunged.

In *Muhammad v. Close*, 540 U.S. 749 (2004) (per curiam), the Supreme Court recognized that some prisoner civil rights cases straddle the line between what is actionable under § 1983, and what should instead be instituted in a habeas corpus action under 28 U.S.C. § 2254.

> Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action.  Some cases are hybrids, with a prisoner seeking relief unavailable in habeas, notably damages, but on allegations that not only support a claim for recompense, but imply the invalidity either of an underlying conviction or of a particular ground for denying release short of serving the maximum time of confinement.

*Muhammad*, 540 U.S. at 750-51 (citations omitted).  *Muhammad* is based on two related decisions: *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997).  In *Heck*, the Supreme Court held that a § 1983 action for damages that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence" is not cognizable until the conviction or sentence has been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus.  512 U.S. at 486-87.  For purposes of this analysis, "the ruling in a prison disciplinary proceeding is a conviction."  *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (citing *Balisok*; *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008)).  In *Balisok*, the Supreme Court held that claims that "necessarily imply the invalidity of the deprivation of [the prisoner's] good-time credits" are not actionable under § 1983 unless the prison disciplinary decision has been invalidated, even though the restoration of credits is not sought as a remedy.  520 U.S. at 646-68.

Plaintiff's documents show that he lost one month of good conduct credit on each of the disciplinary actions that landed him in segregation.  Although his complaint does not

request restoration of this lost good conduct time, under *Balisok*, he nonetheless may not maintain an action at this juncture for damages based on his placement in segregation for the same disciplinary offenses.   A finding in favor of Plaintiff in this § 1983 claim would "necessarily imply" that the disciplinary action was invalid, and would therefore run afoul of *Heck* and its progeny.   The same is true for Plaintiff's current request for an injunction to release him from disciplinary segregation, which is also based on his claim that the disciplinary proceedings were invalid.   Thus, his civil rights claim only ripens when the disciplinary decisions have been reversed or otherwise invalidated.   *See Simpson v. Nickel*, 450 F.3d 303, 306-07 (7th Cir. 2006).   Because the complaint indicates that the disciplinary actions remain in full force, Plaintiff's claims in **Count 5** must be dismissed.

The dismissal shall be without prejudice, however, to Plaintiff raising his claim, should he wish to do so, if and when the disciplinary actions that revoked the good conduct time and extended the duration of his confinement are overturned.   Plaintiff may be able to pursue relief in a federal habeas corpus case, after presenting his claim to the Illinois state courts.   This includes appealing any adverse decision to the Illinois Appellate Court and the Illinois Supreme Court.   The Illinois courts, for example, have recognized mandamus as an appropriate remedy to compel prison officials to award or restore sentence credit to a prisoner.   *See* 735 ILL. COMP. STAT. 5/14-101 *et seq.*; *Turner-El v. West*, 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill. App. 1981)).

**Count 5** shall therefore be dismissed without prejudice.

**Dismissal of Count 6 - Retaliation**

Finally, Plaintiff asserts that Defendant Mason turned over his privileged mental health communications to security staff, as an act of retaliation.   He claims that this retaliation

stemmed from the outcome of *Rasho v. Baldwin*, which requires prison staff to provide mental health treatment to Plaintiff.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). In order to plead a retaliation claim, a plaintiff must identify the protected activity on his part, and describe the act(s) of retaliation that were allegedly prompted by his complaint, grievance, or other protected activity. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) ("All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.").

It is true that Plaintiff is a member of the sizeable plaintiff class of inmates whose interests are represented in *Rasho v. Baldwin*. However, Plaintiff's complaint in this action does not reveal any participation or activity on his part related to the ongoing litigation in *Rasho*. A retaliation claim includes the requirement that the inmate bringing such a claim took some action – typically lodging a complaint, voicing a protest, or filing a lawsuit – which is protected by the First Amendment, and then suffered some adverse action connected to the protected activity. Here, nothing in Plaintiff's pleading or motions suggests that he did anything at all to trigger the alleged retaliation. Merely meeting the criteria for membership in a litigation class, without any other involvement in the lawsuit, is not sufficient to meet the "protected activity" factor in a retaliation claim.

Furthermore, Plaintiff's claim of retaliation implies that the prison mental health staff only recently became obligated to treat his mental illness as a result of the *Rasho* settlement.

However, Plaintiff's own documents[4] demonstrate that he has been receiving mental health treatment in Pinckneyville since at least September 2014, long before the May 23, 2016, settlement agreement in *Rasho*.  Thus, there was no change in Plaintiff's eligibility for mental health services that would have any logical connection to a "retaliation" event on May 11, 2016, when Defendant Mason turned over his note.

For these reasons, the retaliation claim in **Count 6** shall be dismissed without prejudice.

**Pending Motions**

Plaintiff's motions for recruitment of counsel (Docs. 2, 8, & 15) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 3) is **GRANTED IN PART AND DENIED IN PART.**  Service shall be ordered below on those Defendants who remain in the action.  No service shall be made on the dismissed Defendants.

Plaintiff filed two duplicate "Emergency" motions seeking a TRO and preliminary injunction (Docs. 10 & 12).  The motions request this Court to order his "immediate release from punitive segregation," and order him to be transferred to another prison.  The motions also seek compensatory and punitive damages.

Plaintiff's motions for injunctive relief are grounded on the same arguments that underlie his request for damages – he claims that (1) the disciplinary charges against him were

---

[4] *See, e.g.*, Doc. 10, pp. 6-7, in which Plaintiff's Treatment Review Committee noted that he "has a history of mental health treatment services" for his diagnosis of Schizoaffective Disorder.  He was transferred to Pinckneyville from Lawrence Correctional Center in September 2014.  Further, "Since his incarceration with the IDOC, [Plaintiff] has been placed on multiple crisis watches due to suicidal ideations and delusional thought processes as well as medication non-compliance." *Id.*  According to the online records of the IDOC, Plaintiff has been in state custody since April 2013.  Website of the Illinois Department of Corrections, Offender Search page, http://www.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (Last visited Oct. 20, 2016).

improperly brought, because they were based on privileged communication given to Defendant Mason and "illegally received" by those who charged him, and (2) he was falsely charged with making a threat, and incorrectly found guilty of that offense.  Essentially, Plaintiff is seeking to overturn the disciplinary actions and his segregation term through the motions for injunctive relief.

As discussed above under the section of this order dismissing Count 5, Plaintiff is barred by the precedents of *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), from maintaining a civil rights action where a grant of relief would necessarily call into question the validity of a disciplinary "conviction," unless that disciplinary action has been expunged or reversed.  *See Muhammad v. Close*, 540 U.S. 749 (2004) (per curiam).  If the Court were to grant the present motions for injunctive relief, such an order would directly undermine Plaintiff's prison disciplinary convictions, in violation of *Heck*, *Balisok*, and *Muhammad*.  Consistent with the dismissal of Count 5 herein, the Court therefore **DENIES** the motions for TRO/preliminary injunction (Docs. 10 & 12), without prejudice.

Plaintiff's Motion in Addendum (Doc. 11) contains new claims of due process violations and double jeopardy that were not included in the complaint.  To the extent that the motion seeks to add these new claims to this case, it is **DENIED**.  Such piecemeal amendments to a complaint are not permitted.  *See* FED. R. CIV. P. 8(a).  All claims against all defendants must be set forth in a single pleading.  However, the documents submitted by Plaintiff along with his motion (Doc. 11, pp. 3-15) shall be considered as additional exhibits to the original complaint, as reflected herein.

The "Motion to Fast Track" (Doc. 13) renews Plaintiff's request for an immediate hearing on his TRO motion to be released from segregation, and asks for the matter to be

assigned to a magistrate judge.   This motion is **GRANTED IN PART**, in that Plaintiff's claim in Count 3 shall be referred to the magistrate judge for further consideration, and the Defendants involved in that claim shall be served.   All other relief requested in the motion (Doc. 13) is **DENIED**.

<u>**Disposition**</u>

      **COUNTS 1 and 4** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.   **COUNTS 2, 5, and 6** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.   Defendants **BALDWIN, WEXFORD MEDICAL SERVICES, LOVE, MEDICAL DIRECTOR,** and **FLATT** are **DISMISSED** from this action without prejudice.

      The Clerk of Court shall prepare for Defendants **MASON, MYERS, McBRIDE, LASHBROOK,** and **URASKI**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

      With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.   Any

documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motions for recruitment of counsel (Docs. 2, 8, & 15).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7**

**days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: October 21, 2016**

            s/ MICHAEL J. REAGAN
            Chief Judge
            United States District Court